

$40^{o}$

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

NADIRAH MCRAE, Individually and
and as Class Representative
2936 N. Taney Street
Philadelphia, PA 19132                 : CIVIL ACTION NO.:
          Plaintiffs

         v.                               17 4054

THE SCHOOL REFORM COMMISSION
440 N. Broad Street, Suite 101
Philadelphia, PA 19130
         and
SCHOOL DISTRICT OF PHILADELPHIA
440 N. Broad Street
Philadelphia, PA 19130
        Philadelphia, PA 19130
         Defendants

## CLASS COMPLAINT

Plaintiff, individually and as Class Representative, by and through undersigned counsel,

aver as follows:

## I.   INTRODUCTION

1.     African-American female student athlete, Nadirah McRae, shown below kneeling

in a white sweatshirt, by and through undersigned counsel, brings this class action individually

and on behalf of herself and hundreds of past, present, and future African-American female

student athletes against The School Reform Commission and the School District of Philadelphia

to challenge their failure to provide

equitable athletic participation

opportunities and benefits for African

American female students.



2.    This complaint challenges both longstanding race and sex discrimination that continues to this day and new discriminatory plans that will result in the permanent elimination of girls Field Hockey and Lacrosse from traditionally low-income African-American Philadelphia High Schools, including but not limited to Strawberry Mansion High School.

3.    Plaintiff brings this action on behalf of herself and a class of past, current, prospective, and future African-American female student athletes. Defendants' actions have caused harm and imminently will cause even greater, irreparable harm to the plaintiff, which includes the loss of a scholarship opportunities and valuable scholarship funds, and to the plaintiff class, if they are not enjoined.

4.    Defendants' actions constitute intentional discrimination on the basis of race and sex in violation of Title VI of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972.

5.    Title VI prohibits discrimination on the basis of race, color, or national origin in any program or activity, such as the School District of Philadelphia, that receives Federal funds or other Federal financial assistance. Accordingly, the School District of Philadelphia cannot distinguish among individuals on the basis of race, color or national origin, either directly or indirectly, in the types, quantity, quality or timeliness of program services, aids or benefits that they provide or the manner in which they provide them. It should be noted that this prohibition applies to intentional discrimination as well as to procedures, criteria or methods of administration that appear neutral but have a discriminatory effect on individuals because of their race, color, or national origin.

6.    Title IX prohibits sex discrimination by educational institutions that receive Federal financial assistance.

2

7. Defendants have violated Title VI and Title IX by failing to provide African-American female student athletes with an equal opportunity to participate in Field Hockey and Lacrosse and by failing to provide female athletes with the same benefits provided to male athletes.

## II. PARTIES

8. Plaintiff Nadirah McRae (DOB April 21, 1999) is an adult citizen of the Commonwealth, who resides at 2936 N. Taney Street, Philadelphia, Pennsylvania 19132.

9. In 2001, the School District of Philadelphia, which is a corporate body organized and existing under the laws of the Commonwealth of Pennsylvania, was taken over by the Commonwealth of Pennsylvania, and all effective authority was turned over to the Defendant School Reform Commission (hereafter "SRC").

10. Accordingly, the Defendant SRC, which is a corporate body organized and existing under the laws of the Commonwealth of Pennsylvania, governs and has the ultimate responsibility for the management, operation and control of the Philadelphia County public schools.

11. The Defendant SRC has the authority to promulgate all orders, rules, regulations, policies, and instructions relating to the hiring, supervision, recruitment, and control of the Superintendent, educators and all other employees of the county school system.

12. William Hite, Jr., PhD, is the Superintendent of the School District of Philadelphia. Dr. Hite was selected by the SRC and is considered the chief executive officer of the Philadelphia County public schools.

13. Melissa Schafer is the school counselor at Strawberry Mansion High School.

3

14. Since Defendants, through their employees and agents, have acted together to discriminate against African-American female student athletes of the school district, hereafter Plaintiff will refer to the School District of Philadelphia, the School Reform Commission and Dr. Hite collectively as the "District."

15. The District receives Federal financial assistance and the benefits therefrom.

16. Therefore, all of the Districts' programs, including its athletics, are subject to the requirements of Title VI and IX. The District must comply with Title VI and IX and must not permit or engage in race or sex discrimination in any educational program or activity, including its athletics. Indeed, the District has promised that it will comply with Title IX as a condition of its receipt of such federal financial assistance, as required by 34 C.F.R. §106.4.

## III. JURISDICTION AND VENUE

17. This Court has jurisdiction over the claims in this action pursuant to 28 U.S.C. §§1331, 1343(a)(3), and 1343(4). Jurisdiction for declaratory and other relief is invoked pursuant to 28 U.S.C. §§2201 and 2202.

18. Venue is proper pursuant to 28 U.S.C. §1391(b), as all of the claims arose in and the defendant is located in the Commonwealth of Pennsylvania and within the Eastern District of Pennsylvania.

## IV. CLASS ACTION ALLEGATIONS

19. The Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a) and (b)(2) on behalf of herself and on behalf of a class consisting of all past, present, prospective, and future African-American female student athletes, who participate, seek to participate, or have been deterred or prevented from participating in Field Hockey and Lacrosse because of the Districts' discriminatory actions.

4

20.    All class members are aggrieved persons under Federal civil rights law as a result of the District's actions, policies, and practices. Proposed Class Representative seeks declaratory and injunctive relief on behalf of herself and all class members to prevent the District from engaging in present and future unlawful conduct and to require the District to rectify the effects of present and past discrimination.

21.    This matter is properly maintainable as a class action pursuant to Fed.R. Civ. P. 23(a)(1) in that joinder of all members of the proposed class is not only impracticable, but also impossible, because the class includes members whose identities are incapable of being known at the present time.

22.    Due to the fluid nature of High School enrollment and participation in athletics, the identities of proposed class members will change during the course of this litigation. As some female students and athletes graduate or transfer schools, other class members will enroll as freshmen or transfer students. While the existence of the class is enduring, the identity of individual members constantly changes, as is inherent with high school athletics.

23.    The proposed class includes past and current African-American female student athletes for whom the District has failed to provide an equal opportunity to participate in Field Hockey and Lacrosse and for whom the District has failed to provide athletic benefits comparable to those it provides its male athletes. It also includes innumerable prospective and future female students who are or will be subjected to the District's race and sex discrimination if the District is not enjoined.

24.    The proposed class meets the requirements of Fed. R. Civ. P 23(a)(2) because there are questions of law and fact common to the class members regarding whether the District

discriminates on the basis of race and sex in its (1) allocation of athletic participation opportunities and (2) allocation of treatment and benefits to varsity athletes.

25.    Title IX itself is a class based statute, especially within the context of sex-segregated educational programs like athletics, because no individual plaintiff has a claim unless the educational institution discriminates against the class of women as a whole.

26.    The .proposed class representative satisfies Fed. R. Civ. P. 23(a)(3) because her claims are typical of those of the proposed class. Like the proposed class, the representative was denied an equal opportunity to participate in varsity Field Hockey and Lacrosse athletics because of ongoing race and sex discrimination, and/or was denied an equal allocation of the treatment and benefits provided by the District to varsity athletes.

27.    The proposed class representative will fairly and adequately protect the interests of the class pursuant to Fed. R. Civ. P. 23(a)(4) because she will prosecute this action vigorously in order to obtain remedies for the entire class, whose interests she shares. Class Counsel has experience in Title VI actions, Title IX actions, class actions, and litigating complex civil actions, including matters against the District.

28.    The Plaintiff satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because the District behaves in a discriminatory way that is generally applicable to the entire proposed class. As a result, final declaratory and injunctive relief is appropriate with respect to the class as a whole.

## V.    THE REQUIREMENTS OF TITLE VI

29.    Title VI, enacted in 1964, provides in relevant part:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

6

42 U.S.C. §2000d et seq..

30.     Title VI of the Civil Rights Act of 1964 prohibits discrimination on the basis of

race, color or national origin in programs and activities operated by recipients of federal funds.

31.     In the education arena, Title VI's protection applies to all elementary and

secondary schools, colleges and universities—public or private—that receive federal financial

assistance, and to certain other institutions. Its protection extends to all aspects of these

institutions' programs and activities.

## VI.     THE REQUIREMENTS OF TITLE IX

32.     Title IX, enacted in 1972, provides in relevant part:

No person in the United States shall, on the basis of sex, be excluded from participation
in, be denied the benefits of, or be subjected to discrimination under any education
program or activity receiving Federal financial assistance. . .

20 U.S.C. §1681(a).

33.     The Civil Rights Restoration Act of 1987 made plain Congress' intent that

"program or activity," as used in Title IX, applies to any program or activity offered by an

educational institution that receives federal financial assistance – whether or not the program

itself receives such assistance.  20 U.S.C. §1687. Because the District receives federal

financial assistance, its athletic program is subject to Title IX and the District must comply with

its requirements.

34.     In the statute, Congress expressly delegated authority to the United States

Department of Health, Education and Welfare (HEW) to promulgate regulations interpreting

Title IX. 20 U.S.C. § 1682. In 1975, HEW promulgated these regulations at 45 C.F.R. Part 86.

The United States Department of Education ("DOE") later adopted these regulations and

codified them at 34 C.F.R. Part 106 (collectively, the "Regulations").

7

35.    The Regulations require that federal fund recipients, like the District, undertake remedial and affirmative efforts to eliminate sex discrimination.

36.    The regulations further direct schools to evaluate their own policies and actions; to modify any policies and actions that are discriminatory; and to take remedial steps to eliminate the effects of discriminatory actions. 34 C.F.R. § 106.3(c). These mandates apply whether or not anyone has complained about discrimination.

37.    On information and belief, the District has not undertaken sufficient remedial or affirmative action to remedy the historical and ongoing sex discrimination in its athletic program.

38.    The Regulations include a general prohibition against sex discrimination in 34 C.F.R. § 106.31(a):

(a)    General. Except as provided elsewhere in this part, no person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any academic, extracurricular, research, occupational training, or other educational program or activity operated by a recipient which receives Federal Financial assistance.

39.    The Regulations also include more specific prohibitions in 34 C.F.R. § 106.31(b) that state:

(a)    Specific prohibitions. Except as provided otherwise in this part, in providing any aid, benefit, or service to a student, a recipient shall not, on the basis of sex:

(1)    Treat one person differently from another in determining whether such person satisfies any requirement or condition for the provision of such aid, benefit, or service;

(2)    Provide different aid, benefits, or services or provide aid, benefits, or services in a different manner;

(3)    Deny any person any such benefit or service;

(6)    Aid or perpetuate discrimination against any person by providing significant assistance to any agency, organization, or person which discriminates on the basis of sex in providing any aid, benefit, or service

8

to students or employees.

(7)     Otherwise limit any person in the enjoyment of any right, privilege, advantage, or opportunity.

40.     The Regulations also identify ten (10) non-exclusive areas in which recipients

must provide equal athletic opportunity, including:

1.     Whether the selection of sports and levels of competition effectively accommodate the interests and abilities of members of both sexes;

2.     The provision of equipment and supplies;

3.     Scheduling of games and practice time;

4.     Travel and per diem allowance;

5.     Opportunity to receive coaching and academic tutoring;

6.     Assignment and compensation of coaches and tutors;

7.     Provision of locker rooms, practice and competitive facilities;

8.     Provision of medical and training services;

9.     Provision of housing and dining facilities and services; and

10.    Publicity.

34 C.F.R. § 106.41(c). A school's "failure to provide necessary funds for teams for one sex" also may be indicative of sex discrimination. *Id.*

## VII.    BACKGROUND

41.     As described below, the District has discriminated against Plaintiff and other African-American girls, who were interested in playing Field Hockey and Lacrosse.

42.     Historically, the District has refused to provide girls in predominantly lower-income African-American high schools, such as Strawberry Mansion High School, the

9

opportunity to play Field Hockey and Lacrosse.

43. In violation of Title VI and IX, the District has reserved those sports for its magnet schools and more privileged high schools, which are not predominately lower-income and African-American.

44. For example, according to its website the District's Philadelphia Public League has "9 Field Hockey Teams at the high school level", which are "Philadelphia High School for Girls, Central High School, George Washington High School, Northeast High School, Abraham Lincoln High School, Frankford High School, Franklin Towne Charter High School, Rhodes High School and Parkway West High School." The Northeast Vikings have been the Public League Champion for the past three years.

44. Northeast High School, which has had a well-funded and supported girls field hockey team, for the 2015-2016 school year is 30.3% African American, 18.5% White, 21.2% Asian, 23.2% Latino, and 6.8% other races.

45. In contrast, for the same year Strawberry Mansion High School is approximately 98% African-American.

46. The District's discriminatory practices follow a similar pattern for girls Lacrosse. Again, the District funds, supports and encourages girls at schools like Northeast to play Lacrosse while refusing to make those opportunities available to girls of color at schools like Strawberry Mansion High School.

47. In fact, the District has actively worked to block girls, including Plaintiff, from having the same opportunities as the girls at Northeast, for example.

48. The District's actions are particularly disturbing considering the well-established and recognized potential collegiate sports offer to create opportunities for a college education

10

that would not be available or affordable otherwise.

49.     These opportunities were recognized by Jazmine Smith, a long-time advocate for getting African-American girls involved in Field Hockey and Lacrosse.

50.     After volunteering her time to help establish Field Hockey and Lacrosse teams for girls, Ms. Smith was hired by the District in October of 2015 to be the coach for Strawberry Mansion's girls Field Hockey and Lacrosse teams.

51.     In 2015-2016, approximately 25 to 30 girls joined Coach Smith's newly formed Field Hockey and Lacrosse teams at Strawberry Mansion.

52.     Plaintiff was one of the girls who signed up to play for Coach Smith. She was a junior at the time.

53.     The girls excelled under Coach Smith's guidance, support and leadership. Plaintiff, for example, fell in love with these new sports, experienced much improved grades and, for the first time in her life, she saw a path to college.

54.     Despite the advantages the girls were reaping, the District decided that there was no place for girls of color in the Public League and in the traditionally "white" sports of Field Hockey and Lacrosse.

55.     The District decided that to group Strawberry Mansion primarily with teams from other predominantly African-American schools, as shown below[1], into what became known and referred to as the "Negro League."

56.     The teams and players relegated to the "Negro League", which included Delaware Valley Regional High School, Strawberry Mansion



---
[1] https://spiritnews.org

11

High School, West Mastery Shoemaker and Frankford High School, were often blocked from playing the established "white" teams in the Public League, and instead competed many with other teams from other "Negro League" schools.

57. The District's decision to relegate these girls to a the "Negro League" was not on the basis of the girls' athletic talent but the basis of their skin color and the District's prejudicial attitude towards girls of color playing traditional white-girl sports.

58. The District's actions in creating a "Negro League" and thereby preventing girls like Plaintiff from competing against the established, more diverse teams not only violated Title VI and Title IX but robbed the girls of opportunities to improve their skills and to be seen by college scouts and recruiters.

59. Unbeknownst to the players, the District told referees that the teams in the "Negro League" were not varsity athletes but were in a developmental league. As a result, the teams in the "Negro League" were not given equal or fair opportunities to play for the Public League Championship.

60. The District took other adverse actions against the Strawberry Mansion High School girls Field Hockey and Lacrosse teams including: denying requests for funds to pay for uniforms; canceling buses to transport the girls to games, which effectively canceled the games and blocks access to college scouts; creating schedules that denied African-American girls games against "white" high schools; and refusing to act on complaints that white players and coaches acted with racial hostility toward the African-American student athletes.

61. In May 2017, after Coach Smith began complaining to the District about the girls of Strawberry Mansion being forced to play in the "Negro League" and not being allowed to play other more established teams, she was fired and the Field Hockey and Lacrosse teams were

12

dismantled.

62.    The District's discriminatory actions have already harmed the future of the Field Hockey and Lacrosse teams at Strawberry Mansion. As a result of the District's actions eliminating the teams, firing the head coach and leaving the team without a head coach for the remainder of the year when critical recruitment and scheduling is done, and refusing to commit to the team beyond the next year, girls have left the program.

63.    The District's dismissive and discriminatory attitude extended beyond the field and permeated the school and its counselors.

64.    The school counselor at Strawberry Mansion was Melissa Schafer, who it should be noted is Caucasian.

65.    The District's dismissive and discriminatory attitude has caused real damage to the Plaintiff and girls like her, including the loss of the Plaintiffs' full scholarship and alumni grant to the University of Hartford a Division I school for Lacrosse, valued at more than $250,000.00.

66.    On June 7, 2017, the Plaintiff was offered a scholarship by the coach of the University of Hartford's Lacrosse coach, Meg Decker, pending final grades and acceptance to the University.

67.    On July 18, 2017, the University of Harford Compliance Department went through a traditional initial eligibility procedure for its incoming player roster to make sure every player was qualified to play through the NCAA. The Plaintiff's final grades and SAT scores were significantly lower than anticipated due to her freshman and sophomore years before she began working with Coach Smith.

68.    While the University accepted her on a probationary basis, the NCAA would not

13

be able to certify her to receive financial support from the Athletic Department until she proved her ability to perform in school for one academic year at the University of Hartford.

69.     Coach Decker spoke with Coach Smith and the Plaintiff about applying for a waiver to the NCAA, which are commonly awarded to players like the Plaintiff.

70.     On July 20, 2017, Plaintiff sent in her application for a waiver and her personal statement explaining why she believed she was capable of succeeding at the University of Hartford.

71.     On July 24, 2017, Coach Decker, who was supporting the Plaintiff's application for a wavier, received feedback from the NCAA that the Plaintiff's transcripts from Strawberry Mansion did not indicate her graduation date and were therefore not considered "proof of graduation".

72.     Coach Decker advised the Plaintiff to get in touch with her guidance counselor, expressing the urgent need for the documents before any potential appeal could be submitted. At this point, the Plaintiff was still deemed a pending-Non-Qualifier through the NCAA.

73.     On July 27, 2017, Coach Decker and the University of Hartford continued to build a potential case for the Plaintiff's waiver by researching articles and information surrounding her circumstance to prepare for the appeal. However, the University of Hartford had still had not received necessary paperwork from Strawberry Mansion High School.

74.     It should be noted that the Plaintiff had repeatedly requested the missing paperwork from her school counselor Ms. Schafer. When asked about the missing paperwork, Ms. Schafer responded by disbelieving that the Plaintiff had managed to get into a school like the University of Harford and continuously advised her to set sights on less prestigious schools.

75.     On Aug 17, 2017, according to the Coach Decker the NCAA still had not received

14

the paperwork from Strawberry Mansion, making an appeal impossible to submit until received.

76.     Coach Decker asked the Plaintiff for her school counselor's phone number and

she called her directly to get the missing paperwork. After Coach Decker and the counselor

played phone tag, the counselor left a voicemail asking what was needed and where to send it.

Coach Decker sent an email that night detailing everything that was missing.

77.     On Aug 22, 2017, Coach Decker checked and found that the NCAA Eligibility

Center was still not showing the documents needed for the Plaintiff's waiver.

78.     By mid-August it became clear to everyone involved that the Plaintiff would not

be able to claim her scholarship and would not be able to attend the University of Hartford.

79.     Coach Decker emailed the Plaintiff and stated:

This entire process started because Nadirah is truly someone special. I believe she
will succeed in her dream of becoming a sports journalist. In my opinion, the best
option for Nadirah would be to attend a junior college and play lacrosse for two
years. This would allow her to develop the skills necessary to succeed at a four
year institution. If she decides to attend the University of Hartford without being
an athlete, please know that due to NCAA rules and regulations, we would be
unable to provide her with any resources available specifically to student-athletes
and she would need a sponsor to pay for her to attend for the 1st year and then
join the Hartford Lacrosse Team her sophomore year.

80.     The District's failure to provide equal opportunity for its lower-income African-

American female students by giving them equal access and opportunities to Field Hockey and

Lacrosse athletic programs has harmed African-American female students who do not now play

these sports but want to, as well as current, prospective and incoming female students, by

deterring them from participating in athletics and narrowing their athletic options

81.     As a result of District's unlawful actions, Plaintiff and class members have

suffered and will continue to suffer lost educational opportunities and benefits, including the

imminent loss of the opportunity to participate in the soon to be eliminated Field Hockey and

15

Lacrosse teams.

## Discrimination In Treatment

82. On information and belief, the District provides better facilities to its magnet and certain other schools than it does to predominantly lower-income African-American schools, such as Strawberry Mansion.

83. On information and belief, the District's magnet and more diverse schools have a lower coach-to-student ratio than teams from predominantly lower-income African-American schools, such as Strawberry Mansion, therefore receiving more access to coaching and other staffing resources.

84. On information and belief, greater publicity and fundraising staff support is dedicated to its magnet and more diverse schools than it does to predominantly lower-income African-American schools, such as Strawberry Mansion.

85. The District provides greater access to uniforms and equipment to its magnet and more diverse schools than it does to predominantly lower-income African-American schools, such as Strawberry Mansion.

86. On information and belief, the District scheduled more games for its magnet and more diverse schools than it does to predominantly lower-income African-American schools, such as Strawberry Mansion, exacerbating the disparities between the teams in the "Negro League" and those in the Public League.

87. On information and belief, the District provides better facilities to the boys' football team at its predominantly lower-income African-American schools, such as Strawberry Mansion, than it does for non-traditional African-American sports like Field Hockey and Lacrosse.

16

88.    On information and belief, greater publicity and fundraising staff support is dedicated to the boys' football team at its predominantly lower-income African-American schools, such as Strawberry Mansion, than it does for non-traditional African-American sports like Field Hockey and Lacrosse.

89.    The District provides greater access to uniforms and equipment to the boys' football team at its predominantly lower-income African-American schools, such as Strawberry Mansion, than it does for non-traditional African-American sports like Field Hockey and Lacrosse. As can be seen below[2], the Strawberry Mansion girls' team were not provided complete uniforms or cleats but the football team received complete uniforms and proper footwear.



---

[2] Photo by https:/

## VIII. COUNTS

### COUNT I: TITLE VI

90. Plaintiffs incorporate by reference paragraphs 1 through 84.

91. Title VI prohibits schools from discriminating against students on the basis of their race and requires equality between athletes with respect to opportunities, level of competition, and benefits.

92. The District violated Title VI by failing to provide girls from lower-income African-American high schools equal opportunities to participate in Field Hockey and Lacrosse and relegating them to play in a "Negro League."

93. The District violated Title VI by creating a "Negro League" and not allowing all teams in the District to compete for the Championship.

94. The District violated Title VI by failing to fully and effectively accommodate the athletic interests and abilities of its current and prospective lower-income African-American students by failing to add and support teams for which there is interest and ability.

95. The District discriminates against lower-income African-American girls as a whole with respect to coaching, scheduling, facilities, recruiting, publicity and fundraising support.

96. Despite its noncompliance, the District has initiated actions that will lead further harm and the total elimination of the Field Hockey and Lacrosse programs from the Strawberry Mansion.

### COUNT II: TITLE IX

97. Plaintiffs incorporate by reference paragraphs 1 through 91.

98. Title IX requires equality between athletes with respect to opportunities, level of

18

competition, and benefits.

99. The District violated Title IX by failing to provide girls from lower-income African-American high schools equal opportunities to participate in Field Hockey and Lacrosse

100. The District violated Title IX by creating a "Negro League" and not allowing all teams in the District to compete for the Championship.

101. The District violated Title IX by failing to fully and effectively accommodate the athletic interests and abilities of its current and prospective female students by failing to add teams for which there is interest and ability.

102. The District discriminates against lower-income African-American girls as a whole with respect to coaching, scheduling, facilities, recruiting, publicity and fundraising support. For example, the Strawberry Mansion boys' football team are provided with beautiful new uniforms and equipment. The girls Lacrosse and Field Hockey teams were not supported financially at all and were forced to rely on donations.

103. Despite its noncompliance, the District has initiated actions that will lead further harm and the total elimination of the Field Hockey and Lacrosse programs from Strawberry Mansion.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court enter judgment in their favor and award the following relief:

(a) Award the Plaintiff damages in access of $250,000.00 plus damages for the humiliation and embarrassment she has had to suffer as a result of the Districts negligence and intentional discrimination;

(b) Certify this action as a class action for declaratory and injunctive relief on

19

behalf of all past, present, prospective, and future lower-income African-American female students who participate, seek to participate, or have been deterred or prevented from participating in Field Hockey and Lacrosse sponsored by the District;

(c)     Declare that the District has engaged in a continuing pattern and practice of discrimination against on the basis of race and sex relating to Field Hockey and Lacrosse in violation of Title IX and its applicable regulations, policy interpretation, and clarifications;

(d)     Issue an injunction that prevents the District from continuing with its discrimination.

(e)     Award Plaintiff her costs and expenses, including an award of reasonable attorneys' fee; and

(f)     Award such other and further relief as this Court deems just and proper.

FREIWALD LAW, P.C.

By: _____

AARON J. FREIWALD, ESQUIRE
GLENN A. ELLIS, ESQUIRE
Counsel for Plaintiffs

1500 Walnut Street, 18th Floor
Philadelphia, PA 19102
215-875-8000
Fax: 215-875-8575
ajf@freiwaldlaw.com
gae@freiwaldlaw.com