**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NADIRAH MCRAE, individually and as class representative, | : | |
| | : | |
| **and** | : | CIVIL ACTION |
| | : | |
| RICHARD JEAN, as parent and guardian of senior D.J., individually and as class representative, | : | NO. 17-4054 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| THE SCHOOL REFORM COMMISSION, | : | |
| | : | |
| **and** | : | |
| | : | |
| SCHOOL DISTRICT OF PHILADELPHIA, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

**Tucker, J.**                                                                 **September 6, 2018**

Before the Court is Plaintiffs' Amended Class Complaint (ECF No. 10), Defendants'

Motion to Dismiss Plaintiffs' Amended Complaint under Fed. R. Civ. P. 12(b)(1) and (6)

("Motion to Dismiss") (ECF No. 13), and Plaintiffs' Response in Opposition to Defendants'

Motion to Dismiss the Amended Complaint (ECF No. 15).  Upon consideration of the foregoing,

and as discussed in detail below, Defendants' Motion to Dismiss is GRANTED IN PART AND

DENIED IN PART.

# I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On September 12, 2017, Plaintiff Nadirah McRae, a black female former student athlete at Strawberry Mansion High School, a public school in Philadelphia, PA, filed suit against Defendant The School Reform Commission and Defendant School District of Philadelphia for Defendants' alleged violations of Title VI (race discrimination) and Title IX (sex discrimination) of the Civil Rights Act of 1964.  Compl. 18–19, ECF No. 1.  Plaintiff McRae brought suit as an individual and as a potential class representative in a putative class action.

In response, Defendants filed a motion to dismiss contending that, among other things, Plaintiff McRae lacked standing to bring suit against Defendants because she had already graduated from Strawberry Mansion High School by the time Plaintiff McRae filed the Complaint.  Later, an Amended Complaint was filed, which added, among other things, a new plaintiff, D.J., a black female and current student athlete at Strawberry Mansion High School. Amended Compl. ¶¶ 9, 54, ECF No. 10.  In short, the Amended Complaint provides that Defendants violated Title VI and Title IX by failing to provide black female student athletes with equal opportunities to play field hockey and lacrosse and by failing to provide black female student athletes with the same resources and benefits as are provided to non-black and male student athletes.  Amended Compl. ¶ 7.  Plaintiff McRae specifically alleges that Defendants' discriminatory actions resulted in her having lost the opportunity to play lacrosse for the University of Hartford and her having lost an athletic scholarship offer from the University of Hartford in the amount of $250,000.00.  Amended Compl. ¶ 67.  Plaintiffs also contend that Defendants' violations of Title VI and Title IX included Defendants' failure to provide equal access to transportation to athletic competitions, equal access to funds that are used to pay for

athletic uniforms, equal exposure to college athletic recruiters, and equal access to athletic and academic support staff. Amended Compl. ¶ 62.

In response to the Amended Complaint, Defendants filed the present Motion to Dismiss. Defendants advance three arguments in support of dismissal: (A) Defendants argue that neither Plaintiff has standing to pursue her claims; (B) Plaintiffs' claims are also moot because Plaintiffs have graduated or will soon graduate from Strawberry Mansion High School; and (C) Plaintiffs have failed to allege facts sufficient to state the prima facie case for either Title VI race discrimination or Title IX sex discrimination. The Court ultimately agrees only that Plaintiff McRae lacks standing to pursue a claim for injunctive relief. Accordingly, Defendants' Motion to Dismiss is granted only to the extent that it seeks dismissal of Plaintiff McRae's claim for injunctive relief. Defendants' Motion to Dismiss is otherwise denied.

## II.  STANDARD OF REVIEW

### A.  Motion To Dismiss For Lack Of Standing Under Fed. R. Civ. P. 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a complaint based on a court's "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Article III standing is an issue of subject matter jurisdiction and, therefore, a defendant may properly move to dismiss for lack of standing under Rule 12(b)(1). *Hendrick v. Aramark Corp.*, 263 F. Supp. 3d 514, 517 (E.D. Pa. 2017) (citing *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014)). When a defendant files a Rule 12(b)(1) motion before filing an answer, the Rule 12(b)(1) motion is "considered a facial challenge to jurisdiction," and the district court must "apply the same standard of review that would apply on a motion to dismiss under Rule 12(b)(6)." *Id.* (citing *Aichele*, 757 F.3d at 357–58). Ultimately, a "complaint will be

dismissed for lack of standing only if it appears that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction." *Id.* (citing *Hendrick*, 263 F. Supp. 3d at 517).

**B.** **Motion To Dismiss For Failure To State A Claim Under Fed. R. Civ. P. 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A complaint is plausible on its face when its factual allegations allow a court to draw a reasonable inference that a defendant is liable for the harm alleged. *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010). A court must accept as true all factual allegations contained in a complaint and interpret them in the light most favorable to the plaintiff. *Argueta v. U.S. Immigration and Customs Enf't*, 643 F.3d 60, 74 (3d Cir. 2011). Ultimately, a court "may dismiss a complaint for failure to state a cause of action only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Gupta v. Albright Coll.*, 2006 WL 162977 at *2 (E.D. Pa. Jan. 19, 2006) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).

**III.    DISCUSSION**

**A.    Plaintiffs' Standing To Sue**

The Supreme Court has explained that in each case, a "plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). To establish standing, a plaintiff must show that (1) the plaintiff has suffered an injury, (2) that the injury suffered is fairly traceable to the challenged action of the defendant, and (3) that the injury may be redressed by a favorable

decision. *Nichols v. City of Rehoboth Beach*, 836 F.3d 275, 279–80 (3d Cir. 2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

In this case, both Plaintiffs seek relief in the form of damages and injunctive relief. The Court addresses each Plaintiff's standing as to each form of requested relief in turn.

### 1. Plaintiff McRae Has Standing To Pursue A Claim For Damages

Plaintiff McRae seeks monetary damages of more than $250,000.00 from Defendants stemming from Defendants' alleged violations of Title VI and Title IX. Amended Compl. 20. Defendants' alleged violations consist of Defendants' "dismissive and discriminatory attitude" and various discriminatory actions, detailed below in Section III.A.3, which "extended beyond the [athletic] field and permeated the school and its counselors." Amended Compl. ¶ 65. In particular, Plaintiff McRae contends that her Strawberry Mansion High School counselor failed to submit documentation to the University of Hartford and the NCAA to support Plaintiff McRae's application for an NCAA eligibility waiver. Amended Compl. ¶¶ 67, 75–80. An eligibility waiver would have permitted Plaintiff McRae to enroll at the University of Hartford and receive significant athletics based financial assistance despite Plaintiff McRae's low final grades and SAT scores. Absent an eligibility waiver, Plaintiff McRae did not qualify for such financial assistance under NCAA rules. Amended Compl. ¶¶ 69–72. Defendants' failure to support Plaintiff McRae's NCAA eligibility waiver application resulted in Plaintiff McRae's loss of at least $250,000.00 in athletics-based financial assistance that she would have received from the University of Hartford. Amended Compl. ¶¶ 67, 80.

As stated, these facts are sufficient to establish Plaintiff McRae's standing to seek damages. Plaintiff McRae alleged (A) that she has suffered an actual injury—loss of $250,000.00 in athletics-based financial assistance from the University of Hartford, (B) that her

injury is fairly traceable to Defendants' alleged violations of Title IV and Title IX—the problems on the athletic field "permeated the school and its counselors," and (C) that a favorable decision in this case may provide her with redress.

### 2. Plaintiff McRae Does Not Have Standing To Pursue A Claim For Injunctive Relief

In addition to monetary damages, Plaintiff McRae also seeks injunctive relief. Plaintiff McRae requests that the Court "[i]ssue an injunction that prevents the District from continuing with its discrimination." Amended Compl. 20. Plaintiff McRae, however, lacks standing to pursue injunctive relief as an individual and as a class representative because at the time she filed her Complaint, Plaintiff McRae had already graduated from Strawberry Mansion High School. Accordingly, even if Defendants changed their purportedly discriminatory practices and cease their discriminatory actions, such changes would provide no benefit to Plaintiff McRae as an alumnus of the Philadelphia School District. Even though Plaintiff McRae may meet the first two prongs of the standing requirement, Plaintiff McRae fails to meet the third prong because a favorable decision on her claim for injunctive relief would not provide redress for her injury.

Defendants' Motion to Dismiss, to the extent it seeks dismissal of Plaintiff McRae's claims for injunctive relief, therefore, is granted.

### 3. Plaintiff D.J. Has Standing To Pursue A Claim For Damages And Injunctive Relief

Plaintiff D.J. requests the same relief requested by Plaintiff McRae: damages in excess of $250,000.00 and an injunction. Amended Compl. 20. The Court concludes that Plaintiff D.J. has standing to pursue both forms of requested relief.

The Amended Complaint provides that Plaintiff D.J "who is currently a senior at Strawberry Mansion, is experiencing similar difficulty with the school's administration and

counseling personnel." Amended Compl. ¶ 82. Plaintiff D.J. alleges that Defendants'
discriminatory actions toward black female student athletes at Strawberry Mansion High School
included: unequal or reduced funds and support for black female student athletes;[1] unequal
funding for transportation to athletic competitions;[2] unequal access to athletic facilities or access
to otherwise subpar athletic facilities;[3] unequal access to coaching and other support resources;[4]
unequal funding for athletic uniforms and equipment;[5] unequal access to athletic fundraising
staff support;[6] and unequal exposure to college recruiters as a result of intentional acts by
Defendants to restrict black female student athletes' access to more prestigious and higher level
athletic competitions.[7] Plaintiff D.J. alleges, as Plaintiff McRae alleges, that these injuries are
traceable to Defendants' deliberate discriminatory practices and policies in violation of Title VI
and Title IX.

Plaintiff D.J. contends that Defendants' Title VI violations are evident in view of a
number of factual allegations, which, when considered together, are sufficient to state a prima
facie claim for actionable discrimination. Among other allegations, Plaintiff D.J. points to the
following in support of her Title VI claim against Defendants:

- Defendants have a history of refusing to provide field hockey and lacrosse
  training and programming at predominantly black schools. Amended Compl. ¶
  42.

---

[1] Amended Compl. ¶ 48.
[2] Amended Compl. ¶ 62.
[3] Amended Compl. ¶ 85.
[4] Amended Compl. ¶ 86.
[5] Amended Compl. ¶ 88.
[6] Amended Compl. ¶ 91.
[7] Amended Compl. ¶¶ 57–58.

- Defendants grouped the Strawberry Mansion High School field hockey and lacrosse teams with other predominantly black schools to form a less prestigious school district athletic league. Amended Compl. ¶ 57.

- Defendants knew about and permitted Defendants' coaches and other athletic staff to refer to the less prestigious school district athletic league as the "Negro League." Amended Compl. ¶¶ 57, 58.

- Those schools, including Strawberry Mansion High School, that were relegated to the less prestigious school district athletic league were intentionally barred from competing for the more prestigious Philadelphia Public League championship title, which effectively restricted black female student athletes from receiving greater exposure to college athletics recruiters. Amended Compl. ¶ 61.

- Defendants denied funding requests for black female student athletic teams' transportation to competitions and Defendants intentionally scheduled competitions so that predominantly black athletic teams would not compete against schools that were not predominantly black. Amended Compl. ¶ 62.

- Defendants failed to investigate complaints of racial hostility by white players and white coaches toward black female student athletes like Plaintiff McRae and Plaintiff D.J. Amended Compl. ¶ 62.

- Defendants' school counselors have been dilatory regarding and dismissive of Plaintiff McRae and Plaintiff D.J.'s requests for academic transcripts and standardized test scores. Amended Compl. ¶ 82.

- Defendants fired the coach of the Strawberry Mansion High School girls' lacrosse and field hockey teams immediately after the coach lodged a complaint to

Defendants about the teams' treatment and relegation to the "Negro League." Amended Compl. ¶ 63.

- Defendants maintain higher coach to student ratios at predominantly black schools like Strawberry Mansion High School than at schools that are not predominantly black. Amended Compl. ¶ 86.

In addition to these factual allegations, Plaintiff D.J. specifically alleges the following to support her Title IX claim against Defendants:

- Defendants provided greater publicity and fundraising support to the Strawberry Mansion High School boys' football team than to the Strawberry Mansion High School girls' lacrosse and field hockey teams. Amended Compl. ¶ 91.

- Defendants provided greater funding to the Strawberry Mansion High School boys' football team for uniforms and equipment than to the girls' lacrosse and field hockey teams. Amended Compl. ¶ 92.

The Court concludes that these allegations are sufficient, when read together, to establish (A) that Plaintiff D.J. has suffered and, to the extent she remains a student athlete at Strawberry Mansion High School, continues to suffer injury in the form of unequal access to appropriate athletic facilities, unequal access to uniforms and equipment, and unequal access to collegiate recruitment events, among other things, (B) that Plaintiff D.J.'s injuries are fairly traceable to Defendants' alleged violations of Title VI and Title IX, and (C) that Plaintiff D.J.'s injury may be fairly redressed by a favorable award of damages and/or an injunction. A favorable award of damages could, for example, compensate Plaintiff D.J. for expenses incurred as a result of inadequate and unequal funding of team transportation, uniforms and equipment. A favorable award of an injunction, for example, could prevent Defendants from engaging in their continuing

pattern of deliberate discrimination, which affects Plaintiff D.J. as a black female, student athlete at Strawberry Mansion High School. Plaintiff D.J., in short, has standing to pursue both damages and injunctive relief.

**B.  Mootness**

In addition to Defendants' attacks on Plaintiffs' standing, Defendants also attack the justiciability of Plaintiffs' claims for injunctive relief arguing that Plaintiffs' claims are moot by virtue of Plaintiffs' graduation from Strawberry Mansion High School. While the Court agrees that Plaintiff McRae's claim for injunctive relief is moot, the Court disagrees that Plaintiff D.J.'s claim for injunctive relief or damages is moot.

The Third Circuit noted in *Richardson v. Bledsoe*, that "Article III mootness is more 'flexible' than other justiciability requirements, especially in the context of class action litigation." *Richardson v. Bledsoe*, 829 F.3d 273, 278 (3d Cir. 2016). The Third Circuit continued "we have recognized that '[i]n the class action context, special mootness rules apply' for determining at what point in time a named plaintiff must still have a personal stake in the litigation to continue seeking to represent a putative class action. *Id.* at 279 (quoting *Brown v. Phila. Hous. Auth.*, 350 F.3d 338, 343 (3d Cir. 2003)). Accordingly, the Third Circuit held that "when individual claims for relief are acutely susceptible to mootness, a would-be class representative may, in some circumstances, continue to seek class certification after losing his personal stake in the case." *Id.* at 276. Carving out an exception to the doctrine of mootness for those claims that are acutely susceptible to mootness ensures that parties to litigation are not incentivized to engage in dilatory tactics or delay litigation in an attempt to moot a plaintiff's claim by the passage of time.

At this stage of the case, the Court takes the facts pled in the Amended Complaint as true, including the fact that Plaintiff D.J. remains a current student at Strawberry Mansion High School. Therefore, Plaintiff D.J.'s claim for injunctive relief is not moot. Even if Plaintiff D.J. has since graduated from school, however, this case appears to implicate the "acutely susceptible to mootness" exception to the doctrine of mootness. As the members of the proposed class are public school students who are likely to age into and out of the class before this complex case may be fully and fairly litigated, the claims at issue appear acutely susceptible to mootness.[8] The issue of class certification, however, is not yet properly before the Court, and having concluded that Plaintiff D.J.'s claim for injunctive relief is not moot given the facts stated on the face of the Amended Complaint, the Court need not squarely address the issue of mootness in the context of the putative class action nature of the case at this time. The Court concludes only that Plaintiff D.J.'s claim for injunctive relief is not moot because she is a current student athlete at Strawberry Mansion High School.

---

[8] The Court notes that in response to Defendants' initial concerns about mootness raised in Defendants' motion to dismiss the original Complaint, Plaintiff D.J., a current black female student athlete at Strawberry Mansion High School was quickly added as a potential class representative.

In the context of class action lawsuits, and as a matter of practice, there are a number of other procedures to avoid mootness. For example, plaintiffs frequently move to substitute a class representative whose individual claim has been mooted with a potential class representative with a live claim. Such substitutions of class representatives are freely permitted. *See, e.g.*, *Rosetti v. Shalala*, 12 F.3d 1216, 1232 n.33 (3d Cir. 1993) (providing that "[o]f course, the mootness of the named plaintiffs' challenge to the Secretary's conduct will not prevent the district court from deciding whether other members of the proposed class should be permitted to intervene.").

## C. Plaintiffs Have Alleged Sufficient Facts To State The Prima Facie Claims For Title VI and Title IX Discrimination

Defendants next argue that the Amended Complaint should be dismissed because Plaintiffs have failed to state claims under Title VI for race discrimination or Title IX for sex discrimination. The Court rejects these arguments.

### 1. Allegations Of Title VI Claim Are Sufficient

Defendants argue that Plaintiffs have failed to state a claim under Title VI because the allegations in the Amended Complaint cannot support an inference that Defendants intentionally discriminated against Plaintiffs. The Court disagrees.

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000(d). To state a claim under Title VI, a plaintiff must allege that she "(1) was a member of a protected class, (2) qualified for the benefit or program at issue, (3) suffered an adverse action, and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Southeastern Pa. Transp. Auth. v. Gilead Scis., Inc.*, 102 F. Supp. 3d 688, 701 (E.D. Pa. 2015) (citing *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 274–75 (3d Cir. 2014)). To be actionable under Title VI, a plaintiff must ultimately show that a defendant's discrimination was intentional. *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 562 (3d Cir. 2002).

At this juncture, the allegations contained in the Amended Complaint are sufficient to state a claim of intentional discrimination. As discussed at length in Section III.A.3, above, the Amended Complaint contains a number of allegations that, if proven at trial, would support the conclusion that Defendants committed intentional racial discrimination. Among other

allegations, the Amended Complaint provides that Defendants' employees including athletic organizers, coaches, and support staff openly referred to the Strawberry Mansion High School girls' lacrosse and hockey teams as a member of the "Negro League" and that participation in the "Negro League" would not provide meaningful exposure to collegiate athletics recruiters. Amended Compl. ¶¶ 57–58. Defendants allegedly failed to investigate complaints of racial hostility by white coaches and players toward black female student athletes. Amended Compl. ¶ 62. Finally, Plaintiffs allege that Defendants fired the Strawberry Mansion High School girls' lacrosse and filed hockey coach immediately after the coach lodged a complaint to Defendants about the teams' treatment and relegation to the "Negro League." Amended Compl. ¶ 63. The Court concludes that these allegations are sufficient to state a claim for intentional discrimination and Defendants' Motion to Dismiss Plaintiffs' Title VI claim is denied.[9]

## 2. Allegations Of Title IX Discrimination Are Sufficient

Finally, Defendants argue that Plaintiffs also have failed to state a claim under Title IX for two reasons. First, Defendants argue that Plaintiffs have not alleged any facts to support the conclusion that Defendants engaged in sex discrimination. Instead, to the extent that Plaintiffs have alleged that Defendants engaged in any discrimination, such discrimination was "because [Plaintiffs] were teams of African-American athletes playing 'non-traditional African-American sports.'" Mot. to Dismiss 22, ECF No. 13-1. Second, Defendants argue that even if Plaintiffs have alleged that Defendants' discriminated against Plaintiffs based on sex, Plaintiffs have not

_____

[9] Having concluded that the allegations of the Amended Complaint are sufficient to state a claim for intentional discrimination, the Court need not determine whether the allegations also set forth a claim for intentional discrimination under a theory of deliberate indifference. *See Blunt*, 767 F.3d at 273 (holding that in addition to the traditional pathway of establishing intent to discriminate under Title VI, intent may be proven by showing a defendant acted with "deliberate indifference" to a hostile environment).

alleged facts sufficient to establish either a "failure to accommodate" or "unequal treatment" claim under Title IX. The Court rejects both arguments.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a). To state a claim under Title IX, a plaintiff must allege, at minimum, that she was discriminated against on the basis of her sex or gender.

Here, the Amended Complaint sets forth a number of allegations to support the claim that Defendants have and are violating Title IX. Plaintiffs allege that Defendants divide athletics into girls and boys teams, and that Defendants took "adverse actions against the Strawberry Mansion High School girls Field Hockey and Lacrosse teams." Amended Compl. ¶ 62. If proven, the fact that Defendants separated their athletic program into girls and boys teams and then allegedly directed their adverse actions against the girls' teams would support an inference that Defendants intentionally discriminated against Plaintiffs on the basis of their sex. *See, e.g.*, *Choike v. Slippery Rock Univ. of Pa.*, Civ. A. No. 06-622 (W.D. Pa. Jul. 21, 2006) (concluding that plaintiffs allegations that university "segregates its athletic opportunities by gender and that it knowingly denied its female students equal athletic opportunities and knowingly failed to provide its female student athletes equal treatment" were sufficient at the pleadings stage to survive a motion to dismiss a claim for intentional discrimination under Title IX); *Haffer v. Temple Univ.*, 678 F. Supp. 517, 527 (E.D. Pa. Oct. 30, 1987) (concluding that a university's classification of intercollegiate athletic teams on the basis of gender could provide sufficient evidentiary basis to conclude that the university had intent to discriminate in the provision of athletic opportunities based on sex in violation of Title IX).

In further support of Plaintiffs' claim under Title IX, Plaintiffs specifically allege that Defendants provide greater athletic opportunities to male student athletes. Among other things, Plaintiffs allege that Defendants provided better athletic facilities to the Strawberry Mansion High School boys' football team than for the girls' field hockey and lacrosse team,[10] that Defendants provided greater publicity and fundraising support to the boys' football team than Defendants did for the girls' field hockey and lacrosse team,[11] and that Defendants provided appropriate athletic uniforms and equipment to the boys' football team, but that Defendants did not provide comparable uniforms and equipment to the girls' field hockey and lacrosse team.[12] These allegations are sufficient to state a claim under Title IX for sex discrimination under either a "failure to accommodate" or "unequal treatment" theory. Accordingly, Defendants' Motion to Dismiss Plaintiffs' Title IX claim is denied.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED IN PART AND DENIED IN PART. An appropriate order follows.

---

[10] Amended Compl. ¶ 90.
[11] Amended Compl. ¶ 91.
[12] Amended Compl. ¶ 92.